NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0444n.06

No. 09-5551

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

FILED

*Apr 26, 2012*

LEONARD GREEN, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

SIR JACK MATTHEWS,

    Defendant-Appellant.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF TENNESSEE

_____ /

Before:    MARTIN, SUTTON, and KETHLEDGE, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge. In October 2004, Sir Jack Matthews, Rejon Taylor,

and Joey Marshall were indicted for four federal crimes: carjacking resulting in death, in violation

of 18 U.S.C. § 2119(3); murder by use of a firearm during and in relation to carjacking, in violation

of 18 U.S.C. § 924(j)(l); kidnapping resulting in death, in violation of 18 U.S.C. § 1201(a)(1); and

murder by use of a firearm during and in relation to kidnapping, in violation of 18 U.S.C. § 924(j)(l).

Matthews pled guilty to all four crimes pursuant to a plea agreement. He was sentenced to life

imprisonment, the statutory minimum sentence for kidnapping resulting in death. He appeals his

sentence on five grounds, arguing: (1) the district court erred in denying his motion to withdraw his

guilty plea and in denying his motion for a hearing on the issue; (2) the United States breached the

plea agreement when it failed to move for a downward departure and when it allowed him to be

housed with a co-defendant, Taylor; (3) his sentence violates the co-conspirator attribution rule in

*Pinkerton v. United States*, 328 U.S. 640 (1946); (4) his mandatory minimum life sentence is unconstitutional; and (5) his sentence is procedurally and substantively unreasonable. For the following reasons, we **AFFIRM** the judgment of the district court.

## I. Withdrawal of Guilty Plea

Pursuant to a plea agreement, Matthews pled guilty to all four crimes on November 16, 2006. In April 2008, Matthews asked his lawyer to withdraw that plea; he eventually wrote three separate letters requesting withdrawal of the plea. His lawyer did not move to withdraw the plea and later moved to withdraw from representing Matthews. Matthews's subsequent counsel moved to withdraw the plea on November 13, 2008, nearly two years after entry of the guilty plea. The motion was denied, as was a motion for an evidentiary hearing on the issue of plea withdrawal.

We review for abuse of discretion the denial of a motion to withdraw a guilty plea, *United States v. Hunt*, 205 F.3d 931, 936 (6th Cir. 2000). We also review for abuse of discretion the denial of an evidentiary hearing. *Alley v. Bell*, 307 F.3d 380, 389 (6th Cir. 2002). A defendant in Matthews's position must "show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). We balance a non-exhaustive list of seven factors in determining whether the "fair and just" requirement has been met. *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994), *superseded by guidelines amendment on other grounds*, U.S.S.G. § 3B1.1. The *Bashara* factors, *id.*, are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

In support of the first factor, Matthews cites *United States v. Osborne*, 565 F. Supp. 2d 927, 929-31 (E.D. Tenn. 2008), in which the defendant was permitted to withdraw his guilty plea one

hundred thirty-three days after entering it. But the time gap is far longer here, and, importantly, the defendant in *Osborne* first requested that his attorney withdraw his plea two weeks after he entered the plea. The *Osborne* defendant also put forth evidence calling into question whether he pled knowingly and intelligently. Matthews's first request to withdraw his plea came sixteen months after he pled guilty, and he offers no evidence to indicate his plea was not knowing and intelligent. Our Court has held that unjustified delays of far shorter length than Matthews's are reason enough, on their own, for a court to deny withdrawal of a guilty plea. *See, e.g.*, *United States v. Valdez*, 362 F.3d 903, 913 (6th Cir. 2004) (holding that "unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw"); *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) (finding that seventy-seven-day delay, without explanation, is too long). Matthews's delay, standing alone, tends to support denial of his motion to withdraw his plea.

Matthews offers several other arguments concerning the other *Bashara* factors. He argues that a communication breakdown with his attorney is a valid excuse for the tardiness of his motion. While it is true that his former attorney did not respond to his requests to withdraw the plea, he has not identified any such breakdown that occurred prior to his guilty plea, or even prior to April 2008, when he first asked his lawyer to withdraw the plea, which is still a sixteen-month delay. Matthews complains of "constant pressure" from his family to plead guilty to avoid the death penalty, but he has not identified any evidence supporting this assertion; indeed, at his rearraignment, he specifically denied having been pressured into his plea. Similarly, sharing a jail cell with his co-defendant and seeing "the effect of a death penalty against a close friend," and thus realizing that he, too, could face the death penalty upon withdrawing his plea, is not sufficient reason to now overturn his choice to plead guilty. He contends he didn't know he could withdraw his plea, but three letters to his attorney requesting his attorney to do just that prove otherwise.

His arguments on two other *Bashara* factors do not fare better. First, Matthews has not maintained his innocence throughout; he only changed his story, to one that was inconsistent with

the facts that formed the basis of his plea agreement, during his co-defendant's trial in September 2008. Second, review of his plea colloquy during his rearraignment does not reveal that Matthews's plea was anything but knowing, intelligent, and voluntary.

While the district court concluded that Matthews's nature and background, and limited exposure to the criminal justice system, are both factors that weigh in his favor, this conclusion is not enough to overcome the delay in his motion to withdraw and the weight of the other factors. We need not consider the final *Bashara* factor concerning potential prejudice to the United States because Matthews has failed to show a "fair and just reason" for the withdrawal of his plea. *United States v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006) ("[T]he government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." (internal quotation marks omitted)). The district court did not abuse its discretion in denying Matthews's request to withdraw his guilty plea.

Likewise, the district court's denial of Matthews's motion for a hearing on his withdrawal motion was not an abuse of discretion: the tardiness of his motion to withdraw is alone reason enough to deny the withdrawal motion, *see, e.g.*, *Valdez*, 362 F.3d at 913, and no factual development at a hearing would have changed the underlying fact. Though Matthews sought the hearing in part to develop the facts regarding a communication breakdown with his attorney over his desire to withdraw his plea, he has not alleged circumstances beyond what we already know: that he sought to withdraw his plea in April, 2008 but that he was unable to do so until November, 2008. Either delay, as we have discussed, is too long for us to conclude that the district court abused its discretion in denying either his motion for withdrawal or for a hearing.

## II.  Breach of Plea Agreement

Matthews argues that the United States breached the plea agreement by: (1) failing to file a motion for a downward departure pursuant to Sentencing Guidelines section 5K1.1; and (2) allowing

Matthews to be housed in the same jail cell as Taylor, against whom the United States expected Matthews to testify. We review factual findings regarding a plea agreement for clear error; alleged breach of the agreement is a question of law reviewed de novo. *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000).

The plea agreement provides: "The United States may bring to the Court's attention the nature, extent, and value of the defendant's forthrightness. This information will be provided to the Court so that it may be considered in determining a fair and appropriate sentence under the facts of the case." We have previously considered very similar language in an unpublished opinion, *United States v. Ricks*, 398 F. App'x 135, 138 (6th Cir. 2010), and found that:

> [N]o case stands for the proposition that the language in [the] plea agreement—which fails to mention a § 5K1.1 motion at all—binds the government to recommend a departure. Moreover, even if we interpreted the agreement in [defendant's] favor at every turn, it required the government at most to present information regarding [defendant's] forthrightness to the court *in some form,* not necessarily by pressing for a downward departure.

The reasoning in *Ricks* applies here. The United States did not agree to move for a downward departure and therefore did not breach the plea agreement by failing to so move.

Matthews also argues that housing him in the same jail cell as Taylor was a breach of the plea agreement by the United States, but he fails to explain how his housing situation was a breach. There is no evidence that the United States prosecutors or lead investigator knew of his housing situation and it was not until Matthews was pressed on the issue, in a series of six successive questions during Taylor's trial, that Matthews revealed he had been housed with Taylor. Moreover, even if the United States did cause or allow the two co-defendants to share a jail cell, there is no express provision of the plea agreement prohibiting the United States from housing Matthews with Taylor. Matthews has not shown that the United States breached the plea agreement.

### III. Alleged *Pinkerton* Violation

In *United States v. Williams*, 894 F.2d 208, 212 (6th Cir. 1990) (citation omitted), we explained that:

> Under the theory of co-conspirator liability established in *Pinkerton*, the overt act of one partner in crime is attributable to all members of the conspiracy. However, an overt act of one partner cannot be charged against other co-conspirators if it is not charged against the partner who allegedly committed the act, and the act of one partner cannot be charged against other co-conspirators in an inconsistent manner. This would be inequitable.

Matthews alleges that the district court violated the *Pinkerton* principle by attributing Taylor's acts to Matthews but not attributing those same acts to Marshall. Marshall received a sentence of ten years and four months of imprisonment, while Matthews received a life sentence. Matthews's argument ignores that *Pinkerton* merely requires that the overt acts of one co-conspirator be attributed to all co-conspirators, and prohibits the United States from charging the "overt act of one partner . . . against other co-conspirators if it is not charged against the partner who allegedly committed the act." *Id.* Matthews, Taylor, and Marshall were all charged with identical offenses in which Taylor's conduct was attributed to each defendant. Marshall received a lesser sentence in consideration of his substantial assistance to the United States. Matthews's argument on this claim does not succeed.

### IV. Constitutional Challenges to Matthews's Sentence

Matthews raises several constitutional challenges to his sentence, all of which we are bound by precedent to decide against him. *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985) ("A panel of this Court cannot overrule the decision of another panel." (quoting *Gist v. Sec'y of Health & Human Servs.*, 736 F.2d 352, 357-58 (6th Cir. 1984)). Constitutional challenges to a sentence are questions of law reviewed de novo. *United States v. Knipp*, 963 F.2d 839, 843 (6th Cir. 1992).

He argues that, after *United States v. Booker*, 543 U.S. 220 (2005), and in light of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), mandatory minimum sentences are unconstitutional because they are contrary to the sentencing objectives found in 18 U.S.C. § 3553(a). We have considered this issue since *Booker* was decided and the law of this Circuit on this point is clear: "it is well-settled that '[m]andatory minimum sentences, which limit a sentencing court's discretion with regard to §

3553(a) factors, are constitutional.'" *United States v. Wettstain*, 618 F.3d 577, 591 (6th Cir. 2010) (alteration in original) (quoting *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009)).

Matthews argues that his life sentence is cruel and unusual punishment under the Eighth Amendment, or that it violates the due process clause of the Fifth Amendment, when compared with Taylor's sentence of ten years and four months. But, "[t]his Court has agreed [with the Supreme Court] that comparative proportionality is not constitutionally mandated." *United States v. Layne*, 324 F.3d 464, 474 (6th Cir. 2003). Though Matthews only develops his constitutional arguments with regard to the difference in sentences that he and Marshall received, we also conclude that, for the reasons discussed above, his statutorily mandated life sentence is constitutional and violates neither the Fifth nor the Eighth Amendments. *See Wettstain*, 618 F.3d at 591-92.

Finally, Matthews argues that mandatory minimum sentences generally, and 18 U.S.C. § 3553(e) in particular, are unconstitutional because they violate the separation of powers provisions of the Constitution by granting prosecutors sole discretion in deciding whether the court may impose a sentence below the mandatory minimum. Again our precedent dictates the result: we have "flatly rejected" the argument "that a statutory mandatory sentence violates the separation of powers doctrine." *United States v. Odeneal*, 517 F.3d 406, 414 (6th Cir. 2008).

## V. Procedural and Substantive Challenges to Matthews's Sentence

Matthews also argues that his sentence was procedurally and substantively unreasonable. First, he challenges the calculations in the presentence report and the district court's statement that it lacked any discretion "at all" to sentence Matthews to less than life imprisonment. Second, he maintains, without putting forth any real argument, that his sentence was both procedurally and substantively unreasonable in a general sense. "The question of whether a sentence is reasonable is determined using the abuse-of-discretion standard of review." *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 41 (2007)).

Matthews's claims are decided by our precedent. First, procedural reasonableness challenges to a mandatory minimum sentence—here, Matthews's challenges to the presentence report and to the district court's remark that he lacked discretion in choosing a sentence—are not cognizable because, even on remand, "the district court would not have the discretion to impose a shorter term of imprisonment." *United States v. Smith*, 419 F.3d 521, 532 (6th Cir. 2005). Matthews's challenge to the substantive reasonableness of his sentence amounts to a conclusory statement. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *United States v. Roach*, 502 F.3d 425, 442 (6th Cir. 2007) (alteration in original) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)). Thus, we deem Matthews's substantive unreasonableness challenge to his sentence waived.

## VI.

We **AFFIRM** the judgment of the district court.